## Julia Bradley et al. *v.* Zoning Board of Appeals of the Town of Westport et al.

House, C. J., Shapiro, Loiselle, MacDonald and Bogdanski, Js.

Argued October 3—decided November 6, 1973

*Raymond B. Rubens,* for the appellants (plaintiffs).

*Edward R. Karazin, Jr.,* for the appellees (defendants).

*Richard Berkowitz* filed a brief as amicus curiae but did not argue the cause.

MacDonald, J. This is an appeal by the plaintiffs from a judgment of the Court of Common Pleas dismissing the plaintiffs' appeal from the granting of a variance by the defendant zoning board of appeals of the town of Westport.

A review of the record indicates that the defendant Church of the Assumption Social Action Corporation, hereinafter the church, applied to the defendant board for a variance of several sections of the Westport zoning regulations, including those sections governing uses in residence A zones, height restrictions on buildings, and off-street parking, in order to erect a fifty-one-unit apartment building for housing of the elderly. The defendant board, after a public hearing, granted the application. The plaintiffs, neighboring owners whose aggrievement is not in issue, appealed to the Court of Common Pleas and thence to this court.

The relevant facts as disclosed by the record are not in dispute. The parcel in question was located in a residence A zone, more specifically, a one-half acre zone. The zoning regulations applicable to all residence zones, including residence A, provide that "[l]and, buildings and other structures may be used *only* for one or more of the following purposes: 1. One detached dwelling for occupancy by *one* family per lot." (Emphasis added.) Westport Zoning Regs., c. 3 § 1. The other uses permitted include only adjuncts necessary to one-family residential occupancy and to public schools. Two old houses were situated on the property, one formerly used as a convent and containing fourteen bedrooms, the other simply referred to as a "large old colonial."

The defendant board, on the basis of the church's application and the public hearing, granted the ap-

plication for stated reasons which may be summarized as follows: (1) The parcel's unique location, shape and size indicated that the applicant would suffer unusual hardship if relief from the existing zoning regulations were not permitted. (2) Its peculiar characteristics as a one-acre, L-shaped lot, with two buildings thereon, located on a heavily traveled state highway in a residential A zone would in themselves indicate hardship, and, in addition, the parcel's proximity to public and quasi-public, nonresidential uses added to its uniqueness. (3) The site was appropriate for the proposed use and had been used as multidwelling residence housing in the past, and since such a use did not destroy or substantially affect the nature of the surrounding areas, there was no reason to believe that the use requested would do so. (4) The proposed building would be proportionately in scale with the surrounding area and landscape. (5) The comprehensive zoning plan of Westport and zoning itself in Westport would not be affected negatively by the decision.

The plaintiffs contend, inter alia, that the court erred in holding that the church had proved an exceptional difficulty or unusual hardship which would warrant the granting of the variance; that it erred in failing to hold that the granting of the variance would not be in harmony with the general purpose and intent of the zoning regulations and would be contrary to the comprehensive zoning plan; that it erred in failing to find that the defendant board acted in a legislative capacity rather than in a quasi-judicial capacity because it, in effect, rezoned the premises; and that it erred in failing to hold that the defendant board acted illegally, arbitrarily and in abuse of its discretion as a matter of law.

In response to these contentions the defendants rely heavily on *Culinary Institute of America, Inc.* v. *Board of Zoning Appeals,* 143 Conn. 257, 121 A.2d 637, a case in which this court affirmed a judgment of the Court of Common Pleas dismissing an appeal from the granting of a variance to allow the erection of a fifty-four-unit apartment building in a residence A zone in New Haven. In that case we said (p. 262): "If the board can reasonably conclude that a zoning regulation practically destroys or greatly decreases the value of a specific piece of property, it may vary the terms of the regulation, provided, of course, that the variance does not materially impair the effectiveness of the zoning regulations as a whole, and provided, further, that the board's action promotes substantial justice." In that case, however, the applicable zoning ordinance of the city of New Haven specifically permitted many uses in a residence A zone other than for single-family detached dwellings —including uses for clubs, lodges, community houses, buildings for educational, religious or philanthropic use, and dormitories of an educational institution—and many such uses already existed in the neighborhood of the property under consideration, including other multiple apartments. Moreover, the New Haven ordinance specifically permitted multiple-family apartments in other zones as part of the overall New Haven plan. By contrast, the Westport zoning regulations here under consideration contain no provision which authorizes or permits multiple-family dwellings or apartments in any zone; they permit only one-family dwellings on lots of various sizes in residential zones. Westport Zoning Regs., c. 3 §§ 1–4.

The obvious weakness in the defendants' argument, therefore, is that whether or not there was a

demonstration of hardship sufficient to entitle the church to a variance, the action of the board was illegal in that it was not in harmony with the general intent and purpose of the Westport zoning regulations and constituted a legislative act which exceeded the board's authority and usurped the function of the planning and zoning commission.

The general policy enunciated in cases involving the granting of variances has been legislatively expressed in § 8-6 (3) of the General Statutes, which authorizes zoning boards of appeal to "determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose," and in chapter 10 § 3 (A) of the Westport zoning regulations, which requires "harmony with the general purpose and intent of the Zoning Regulations" as a requirement to be satisfied before a variance may be granted. To allow zoning boards of appeal to grant variances authorizing uses nowhere permitted in the zoning regulations of the town would fly in the face of that clearly expressed policy. To do so would, in effect, give zoning boards the capacity to shape the development of the community with little or no regard for the community plan as expressed in the general zoning regulations and would invite the evils which this court has described in relation to spot zoning. "The vice of spot zoning lies in the fact that it singles out for special treatment a lot or a small area in a way that does not further such a [comprehensive] plan." *Bartram* v. *Zoning Commission,* 136 Conn. 89, 94, 68 A.2d 308. Further, we fail to see how the authorization of a use not permitted in the zoning regulations possibly could be in harmony with their intent and purpose. Since there were no regulations per-

mitting apartment-type dwellings anywhere in the town of Westport, there are concomitantly no standards or safeguards contained in the regulations pertaining to them nor regulations concerning further apartment-type development. The Westport zoning regulations provide only for detached residential dwellings, so that any variance must be "in harmony" with the development of detached housing.

The defendants next argue that because the Westport zoning regulations contain a provision prohibiting certain enumerated uses from any district; Westport Zoning Regs., c. 2 § 5; but not specifically prohibiting a multifamily residential use, the board may therefore allow such a use. The gist of this contention is that because certain residential uses, i.e. tourist cabins, trailers and mobile homes; Westport Zoning Regs., c. 2 § 5 (E); were included in the general prohibition, the residential zones were therefore prohibitively zoned and any use other than those prohibited can be allowed. We find no merit in this contention. Generally, permissive zones will be used in zoning residential areas and will allow only those uses specified by the ordinance. See *Corthouts* v. *Newington,* 140 Conn. 284, 287, 99 A.2d 112; "The Connecticut Law of Zoning," 41 Conn. B.J. 262, 264. Furthermore, the Westport zoning regulations, chapter 2 § 1 (A), specifically provide that: "[e]xcept as hereinafter specified, no building, structure or premises or part thereof shall be used, . . . constructed, reconstructed, extended, enlarged or substantially altered, except in conformity with the regulations herein prescribed for the district in which it is located." The regulations then state, as previously mentioned, in each of the provisions setting forth the uses permitted in the differing resi-

dential zones, that "[l]and, buildings or other structures may be used only for one or more of the following purposes. . . ." Westport Zoning Regs., c. 3 §§ 1–4. In the light of these clear statements that the regulations are intended to be permissive, the mere inclusion of one particularly unpopular residential use in the prohibited use provision certainly does not justify the defendants' conclusion that the regulations must be interpreted as being prohibitive.

By authorizing a use not permitted within the zoning regulations the board, in effect, amended those regulations. See 3 Anderson, American Law of Zoning § 14.68. To do so is not the function of the zoning board of appeals. Variances "should not be used to accomplish what is, in effect, a substantial change in the uses permitted in a specific zone. The power to accomplish such a result is in the Zoning Commission." *Dooley* v. *Town Plan & Zoning Commission,* 151 Conn. 304, 313, 197 A.2d 770; *Heady* v. *Zoning Board of Appeals,* 139 Conn. 463, 468, 94 A.2d 789; *Greenwich Gas Co.* v. *Tuthill,* 113 Conn. 684, 694, 155 A. 850. Obviously this is even more true when the use is not permitted anywhere in the municipality. "[T]he establishment of and changes in general zoning regulations are a legislative function, . . . and when the board uses its variance power to change those general rules, it encroaches on this legislative area and thereby acts in abuse of its discretion." *Ward* v. *Zoning Board of Appeals,* 153 Conn. 141, 145, 215 A.2d 104.

We conclude, therefore, that the granting of the variance authorizing a use nowhere permitted in the zoning regulations was not "in harmony" with those regulations and clearly amounted to an amendment

thereto. Such an action endangers the orderly process of zoning, usurps the legislative function of the zoning and planning commission, and is thus illegal and an abuse of the board's discretion.

There is error, the judgment is set aside and the case is remanded for the rendition of a judgment returning it to the zoning board of appeals with direction to deny the application.

In this opinion the other judges concurred.