CRABTREE REALTY COMPANY *v.* PLANNING AND
ZONING COMMISSION OF THE TOWN OF WESTPORT

CRABTREE REALTY COMPANY *v.* ZONING BOARD
OF APPEALS OF THE TOWN OF WESTPORT
(AC 23709)

Dranginis, Bishop and Peters, Js.

Argued February 19—officially released April 20, 2004

*John F. Fallon,* for the appellant (plaintiff).

*Patricia C. Sullivan,* with whom, on the brief, was *Barbara M. Schellenberg,* for the appellees (defendants).

### Opinion

PETERS, J. Pursuant to General Statutes § 8-3 (g), a local zoning commission may deny a site plan application only if the proposed plan "fails to comply with requirements already set forth in [applicable zoning or inland wetlands] regulations."[1] In this case, a commercial landowner was denied approval of plans to construct and to access new off-street parking spaces on adjacent commercial property. In its appeal contesting these denials, the landowner argues that its proposals would neither have enlarged a preexisting nonconforming use nor have violated zoning regulations for residential zones. Like the trial court, we find these arguments

---

[1] See R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 2.2, p.19.

unpersuasive. Accordingly, we affirm the judgments of the court dismissing the landowner's appeals.[2]

The plaintiff, Crabtree Realty Company, owns property located at 777 Post Road East in Westport and leases contiguous property located at 785 Post Road East. It appealed to the trial court from two decisions of the defendant planning and zoning commission of the town of Westport (commission) denying its site plan applications (1) to use part of newly leased property at 785 Post Road East for twenty additional parking spaces for its employees and customers and (2) to construct an access road between the two properties. The commission defended its decisions.

The trial court, agreeing with the commission, dismissed the plaintiff's appeals.[3] It declined to overturn the commission's substantive determinations that the site plan applications did not conform to the applicable Westport zoning regulations. The court further held that the board's improper reliance on evidence not disclosed at a public hearing was harmless error.

Having obtained certification to do so, the plaintiff filed the present appeal, in which it renews the arguments that it presented to the trial court. The plaintiff maintains that the commission (1) should have approved the site plan application for construction of additional parking at 785 Post Road East because it intensified but did not enlarge its preexisting noncon-

[2] During the pendency of the plaintiff's appeal to the trial court, the plaintiff began excavation in the residentially zoned part of its property at 777 Post Road East in Westport and parked some of its vehicles at 785 Post Road East. The Westport zoning board of appeals denied the plaintiff's appeal from the order of a zoning enforcement officer requiring the plaintiff to discontinue these activities. The plaintiff filed a second appeal, and the parties agreed at trial and agree here that the judgment in the plaintiff's appeal from the decision of the zoning commission would govern the plaintiff's appeal from the decision of the zoning board of appeals.

[3] See footnote 2.

forming use of 777 Post Road East, (2) should have approved the site plan application for an access road because this use of its property was not forbidden by the town zoning regulations and (3) acted illegally in relying on evidence that had not been presented at a public hearing. Because each argument raises issues of law, our review of the court's judgment is plenary. *Barbieri* v. *Planning & Zoning Commission*, 80 Conn. App. 169, 174, 833 A.2d 939 (2003).

## I

## NONCONFORMING USE

The plaintiff's first argument for reversal is a challenge to the commission's determination that construction of parking spaces on adjoining property would enlarge rather than intensify its existing nonconforming use of its own property. We agree with the trial court that the commission had the authority to decide as it did.

Although existing nonconforming uses are protected by statute; General Statutes § 8-2; public policy favors their abolition "as quickly as the fair interest of the parties will permit. In no case should they be allowed to increase." (Internal quotation marks omitted.) *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 225 Conn. 731, 740, 626 A.2d 705 (1993). Accordingly, § 6-1.2 of the Westport zoning regulations prohibits the expansion or relocation of an existing nonconforming use. The determination of whether a proposed project is an illegal expansion of an existing use is a question of fact. *Wood* v. *Zoning Board of Appeals*, 258 Conn. 691, 708, 784 A.2d 354 (2001). Our examination of the relevant facts persuades us that the commission had the authority to deny the plaintiff's first site plan application.

The record discloses that the plaintiff owns a car dealership and an adjacent parking area located at 777

Post Road East in Westport. This property is located in a general business district in which off-street parking is a permitted use. An automobile dealership is not, however, a permitted use but is authorized for this plaintiff as a preexisting nonconforming use.

Due to the absence of space for additional parking for its employees and customers at 777 Post Road East, the plaintiff leased adjoining property at 785 Post Road East, which had room for the construction of twenty additional parking spaces.[4] Like 777 Post Road East, the property at 785 Post Road East is located in a general business district in which off-street parking is a permitted use.

The commission denied the plaintiff's proposal to construct this parking lot. It did not question the legitimacy of the plaintiff's quest for additional off-street parking for its employees and customers. For the commission, the dispositive fact was that, in the plaintiff's past operations of its dealership at 777 Post Road East, it had never used any part of 785 Post Road East. This fact led the commission to decide that the proposed construction would illegally expand the plaintiff's nonconforming use in violation of § 6-1.2 of the Westport zoning regulations.

According to the plaintiff, § 6-1.2 is inapplicable because the proposed project was a permissible intensification of a nonconforming use. In support, the plaintiff cites *Zachs* v. *Zoning Board of Appeals*, 218 Conn. 324, 589 A.2d 351 (1991), in which the installation of additional antennae on an existing radio communications tower was held to be permissible as an intensification rather than an enlargement of an existing use. Id., 331–32. Concededly, addition of the new antennae in

---

[4] Apparently, the existing use of this property for an apartment building and a related parking lot would not be disturbed by the proposed construction.

*Zachs* did not involve any enlargement of the land on which the tower stood.

The commission argues that *Zachs* is not applicable under the circumstances of this case. It notes that the court's opinion in *Zachs* did not address, and consequently should not be construed as having overruled, a line of cases that hold the addition of new land to be an illegal expansion of an existing nonconforming use. See, e.g., *Hyatt* v. *Zoning Board of Appeals*, 163 Conn. 379, 383–84, 311 A.2d 77 (1972); *Raffaele* v. *Planning & Zoning Board of Appeals*, 157 Conn. 454, 457, 462, 254 A.2d 868 (1969).

As Professor Terry Tondro has observed, the case law governing expansion of nonconforming uses is not entirely consistent. T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) pp. 158–60. In our view, this inconsistency can best be addressed by heeding the oft-repeated observation that "[t]he legality of an extension of a nonconforming use is essentially a question of fact." (Internal quotation marks omitted.) *Wood* v. *Zoning Board of Appeals*, supra, 258 Conn. 708; *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, supra, 225 Conn. 744.

From this vantage point, we agree with the trial court that the commission was entitled to deny the plaintiff's application because the proposed use of 785 Post Road would have added new land to the plaintiff's nonconforming use of 777 Post Road East. We agree with the court that *Zachs* is factually distinguishable.

The plaintiff reminds us, however, that *Zachs* was not limited to a factual determination that additional use of the radio tower was merely a permissible expansion of an existing nonconforming use. In reaching its conclusion, the Supreme Court set out three criteria for determining the scope of an existing nonconforming use. These criteria are (1) the nature and purpose of

the existing use, (2) the extent to which the proposed use would change the character, nature and kind of use involved and (3) the impact of the proposed use on the neighborhood. *Zachs* v. *Zoning Board of Appeals,* supra, 218 Conn. 332.

According to the plaintiff, application of the *Zachs* criteria in this case requires us to order reversal of the commission's denial of its site plan application. In its view, the first criterion is met because there is no dispute about the nature and purpose of the existing use of its own property for an automobile dealership. The second criterion is met because the proposed use of 785 Post Road East would not change the character, nature and kind of use of the automobile dealership property. Additional parking spaces would merely augment existing parking spaces for employees on its own property. Lastly, the third criterion is met because additional off-street parking will benefit the community by relieving congestion of Post Road East. We are not persuaded.

The plaintiff's analysis is flawed because it assumes the very facts that are at issue. The commission did not decide, and did not have to decide, whether adding additional parking would be advantageous to the plaintiff's dealership. In effect, it decided, and had the right to decide, that an addition to the property of the existing nonconforming use *was* a change in its nature. It would be elevating form over substance if we were to overturn its decision for failure to use the precise wording of the second *Zachs* criterion.

Because the proposed use of 785 Post Road East would result in a physical change of the property under the plaintiff's control, the commission reasonably could decide that granting the plaintiff's proposed use of 785 Post Road East would result in the illegal expansion

of its preexisting nonconforming use. The trial court properly upheld this decision.

## II

## LAND USE IN A RESIDENTIAL ZONE

The plaintiff also challenges the commission's denial of its site plan application to construct an access road to enable its employees and customers to make use of the new parking spaces at 785 Post Road East.[5] It is undisputed that the proposed access road would intrude, in part, into a residential zone. The commission decided that construction of this access road would violate the Westport zoning regulations that govern residential zones. Like the trial court, we are persuaded that the commission had the authority to rule as it did.

In its argument for reversal, the plaintiff asks us to consider the importance of three facts that the commission's decision did not address specifically. The plaintiff emphasizes that (1) the proposed intrusion into the residential zone is small, (2) the access road will not itself be used for parking or other commercial development and (3) there is no feasible off-street alternative to access 785 Post Road East.

The difficulty with this fact based argument is that the commission based its decision entirely on its interpretation of the Westport zoning regulations and development plan. Even if accurate, the facts cited by the

---

[5] The merits of this denial may well have become a moot question in light of our affirmance of the commission's decision that the plaintiff's proposed use of 785 Post Road East violated the Westport zoning regulations. It is difficult to see what relief we could afford the plaintiff with respect to a proposed access road to an illegal destination.

Nonetheless, the exercise of judicial prudence counsels consideration of the plaintiff's claim. If, contrary to our view, the commission should have permitted the plaintiff to use 785 Post Road East, it might still have had the right to forbid the construction of an access road in a residential zone.

plaintiff do not affect the validity of the commission's legal analysis.

The principal reason for the commission's denial of the plaintiff's application was that "[t]he proposed plan is not in conformance with the 1987 Town Plan of Development, which states that '[t]here should be no commercial encroachment into residential zones . . . . The character of residential areas should be maintained and commercial development should be limited to those areas zoned for such development.'" In addition, the commission determined that "[t]he creation of an access lane from 777 Post Road East to 785 Post Road East that crosses a residential zone is not permitted since it represents a commercial use in a residential zone (§ 3 and § 11-2 [of the zoning regulations])."

Without taking issue with the regulations cited by the commission, the plaintiff claims that the commission failed to recognize that the regulations, as the plaintiff reads them, do not expressly forbid its proposed use of its property in the residential zone. In the plaintiff's view, in the absence of an express prohibition, the commission was required to approve its application to build the access road.

The plaintiff's argument draws on Connecticut case law holding that zoning regulations may not be interpreted to include or to exclude by implication anything that is not clearly within their express terms. This proposition is supported by cases such as *Planning & Zoning Commission* v. *Gilbert*, 208 Conn. 696, 705, 546 A.2d 823 (1988), and *Northeast Parking, Inc.* v. *Planning & Zoning Commission*, 47 Conn. App. 284, 293, 703 A.2d 797 (1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998).[6]

---

[6] The plaintiff also cites *Dowling* v. *Zoning Board of Appeals*, 187 Conn. 689, 694, 447 A.2d 1172 (1982); *J & M Realty Co.* v. *Board of Zoning Appeals*, 161 Conn. 229, 233, 286 A.2d 317 (1971); *Fisher* v. *Board of Zoning Appeals*, 143 Conn. 358, 361, 122 A.2d 729 (1956); *Service Realty Corp.* v. *Planning & Zoning Board of Appeals*, 141 Conn. 632, 638, 109 A.2d 256 (1954); *Reed* v.

As the commission notes, the common thread in these cases is that they concerned zoning regulations that were ambiguous. The plaintiff has not identified any linguistic ambiguity in the text of Westport's plan of development or its zoning regulations.

It is possible, of course, to find latent ambiguity in omissions in applicable regulatory texts, and that is the main thrust of the plaintiff's argument. The validity of this argument depends on whether the regulations are as incomplete as the plaintiff alleges them to be. We do not think they are.

The property at issue is located in a Residence A district. Section 13.2 of the Westport zoning regulations defines "Permitted Uses" in that district as "[a]ny use permitted in a Residence AAA District . . . ." Section 11-2 sets out the "Permitted Uses" in a Residence AAA district. It provides in relevant part that "no land, building, or structure shall be used . . . unless otherwise provided in these regulations except for one (1) or more of the following uses . . . ." An access road linking two commercial properties is not a listed exception.

It is difficult to see how much more explicit regulations would need to be to preclude the access road proposed by the plaintiff. We need not rely, however, on our own interpretation of §§ 13-2 and 11-2. In *Bradley* v. *Zoning Board of Appeals*, 165 Conn. 389, 334 A.2d 914 (1973), our Supreme Court, construing a similar provision in prior Westport zoning regulations, held that only those uses expressly specified in the regulations are permitted. Id., 394. *Bradley* definitively refutes the plaintiff's suggestion of a lacuna in the Westport zoning regulations.[7]

---

*Planning & Zoning Commission*, 12 Conn. App. 153, 158 n.7, 529 A.2d 1338 (1987), aff'd, 208 Conn. 431, 544 A.2d 1213 (1988).

[7] The plaintiff's brief does not address this case.

Without addressing *Bradley,* the plaintiff contends that the controlling case is *Barbieri* v. *Planning & Zoning Commission,* supra, 80 Conn. App. 169. *Barbieri* does not, however, purport to limit *Bradley.*

It is true that there are some similarities between this case and *Barbieri.* As in this case, *Barbieri* involved the propriety of an access road between two nonresidential properties. Also as in this case, *Barbieri* involved the propriety of locating part of that access road on property that was in a residential zone. Id., 170–71.

Two facts, however, distinguish *Barbieri* from this case. The first is that, under the East Windsor zoning regulations at issue in *Barbieri,* only specified uses of a grass strip in a buffer zone were forbidden. Id., 175. The second is that the East Windsor planning and zoning commission determined that its regulations permitted use of the buffer zone for a gravel driveway even though pavement was forbidden at that location. Id., 174 n.4.

Over the protest of a neighbor of the defendant business owner, we upheld the judgment of the trial court that affirmed the decision of the East Windsor commission. Reviewing the applicable regulations, we concluded that the commission had the discretion to make the distinctions that it did. Id., 176.

Our conclusion in *Barbieri* does not require reversal of the commission's action in this case. "Recent decisions of [the Supreme] [C]ourt . . . have evidenced a trend toward investing zoning commissions with greater discretion in determining whether [a] proposal meets the standards contained in the regulations." (Internal quotation marks omitted.) *Torrington* v. *Zoning Commission,* 261 Conn. 759, 769–70, 806 A.2d 1020 (2002); *Irwin* v. *Planning & Zoning Commission,* 244 Conn. 619, 627–31, 711 A.2d 675 (1998); R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 33.4, p. 160.

We conclude, therefore, that the trial court properly upheld the decision of the commission to deny the plaintiff's application for site plan approval for its proposed access road. It was the commission's prerogative to exercise its discretion to decide that, under the circumstances of this case, the applicable Westport regulations did not permit even a small intrusion into a residential zone.

## III

## DUE PROCESS

In the commission's statement of the reasons for its denial of each of the plaintiff's site plan applications, it included "[t]he aerial photograph of 1975 and 1991 does not show a driveway or developed lot."[8] Because this photograph had neither been presented at the public hearing nor disclosed thereafter, the plaintiff was unaware of its existence.

The parties agree that the commission should not have taken this photograph into consideration in its denial of the plaintiff's site plan applications. "Before [a commission] may lawfully rely on material nonrecord facts . . . [that] it has learned through investigation, it must allow a party adversely affected thereby an opportunity to rebut at an appropriate stage in the proceedings." *Connecticut Natural Gas Corp.* v. *Public Utilities Control Authority*, 183 Conn. 128, 139 n.9, 439 A.2d 282 (1981); *Feinson* v. *Conservation Commission*, 180 Conn. 421, 428–29, 429 A.2d 910 (1980). "[D]ue process of law requires that the parties involved have an opportunity to know the facts on which the [board] is asked to act . . . and to offer rebuttal evidence." (Internal quotation marks omitted.) *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 257 Conn. 456, 480,

---

[8] The record does not explain why the commission referred to two different dates when citing a single photograph. We find it noteworthy, however, that both parties referred to only one photograph in their briefs.

778 A.2d 61 (2001); *Pizzola* v. *Planning & Zoning Commission*, 167 Conn. 202, 207, 355 A.2d 21 (1974).

The parties disagree on the consequences of this due process violation. The plaintiff maintains that the decisions of the commission must be set aside because, knowing of the photograph's existence, the plaintiff might have established "that the lot was previously developed or that the residentially zoned property in question had previously been used as an unimproved access way between the two commercial lots . . . ." The commission maintains that, under the circumstances of this case, the impropriety was harmless.

The trial court agreed with the commission. It held that "[t]he aerial photo was relevant only to the issue of a preexisting condition which was not the basis upon which the commission relied in making its decision." We agree with the court.

We know of no rule of law that requires a judgment or administrative decision automatically to be set aside because of the receipt or preclusion of a single piece of evidence in violation of the requirements of due process. Even in criminal cases, the law inquires into whether the taint resulting from the improper admission was harmful in light of the record as a whole. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The same rule applies to administrative hearings; *Levy* v. *Commission on Human Rights & Opportunities*, 236 Conn. 96, 110, 671 A.2d 349 (1996); and to zoning cases. *Dram Associates* v. *Planning & Zoning Commission*, 21 Conn. App. 538, 543, 574 A.2d 1317, cert. denied, 215 Conn. 817, 576 A.2d 544 (1990).

In this case, it is difficult to see in what manner the commission's improper reference to the photograph could have affected its decision that constructing parking spaces on adjacent property was an expansion of the plaintiff's existing nonconforming use of its own

property. The plaintiff never claimed that it had previously used the property at 785 Post Road East for any purpose whatsoever. The possible existence of an access road linking the two properties was therefore irrelevant. The plaintiff does not seriously argue to the contrary.

The plaintiff does argue that inspection of the photograph might have played a role with respect to its application to construct an access road in the residential zone. We are not persuaded.

All that the photograph showed was that there had *not* been "a driveway or a developed lot" in the property at issue.[9] The plaintiff never claimed before the commission that it had previously used the residential property for an access road. It now suggests, however, that, having seen the photograph, it might have explored the possibility of a prior use of the property as a roadway by someone else. This is a perplexing suggestion. We fail to see the logic in an argument that a picture of nonuse could reasonably be expected to lead to evidence of use.

We conclude, therefore, that under the circumstances of this case, the commission's impermissible use of evidence does not require us to overturn its decisions. We do not mean to minimize the importance of compliance with the due process rights of applicants for land use permits. Nonetheless, in this case, the commission's departure from these well established principles was harmless.

For the reasons stated, the plaintiff cannot prevail. The trial court properly dismissed the plaintiff's appeal because (1) the plaintiff's proposal to construct new parking spaces on newly leased property violated the

---

[9] Perhaps the plaintiff might have been prejudiced if the photograph had shown the opposite, i.e., the existence of some prior development.

policy against the expansion of nonconforming uses and (2) its proposal to construct an access road within a residential zone violated applicable zoning regulations. Furthermore, the court properly rejected the plaintiff's contention that the commission's improper reliance on an undisclosed photograph was harmful to the plaintiff's presentation of its case.

The judgments are affirmed.

In this opinion the other judges concurred.